UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Criminal Action No. 2:09-33-DCR |
| Plaintiff/Respondent, ) | and |
| ) | Civil Action No. 2:18-28-DCR |
| V. ) | |
| ) | |
| LAZELLE MAXWELL, ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| Defendant/Movant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant Lazelle Maxwell was convicted at trial of conspiring to distribute and possess with the intent to distribute fifty grams or more of a mixture or substance containing a detectable amount of cocaine base ("Count 1") and conspiring to distribute and to possess with the intent to distribute 100 grams or more of a mixture or substance containing a detectable amount of heroin ("Count 2"). [Record Nos. 65, 146] He was subsequently sentenced to 240 months' imprisonment on Count 1 and 120 months' imprisonment on Count 2, to be served consecutively, for a total term of 360 months. The Court also imposed a ten-year term of supervised release on Count 1 and an eight-year term of supervised release on Count 2, to be served concurrently. [Record No. 208]

The United States Court of Appeals for the Sixth Circuit affirmed Maxwell's conviction and sentence. *See United States v. Shields*, 415 F. App'x 692, 705 (6th Cir. 2011). Maxwell then filed a motion to vacate under 28 U.S.C. § 2255 in June 2012. [Record No. 244] His initial § 2255 motion was denied, but a certificate of appealability was issued on the limited question of whether his trial counsel erred under *Strickland v. Washington*, 466 U.S. 668

-1-

(1984), by failing to challenge the charges as multiplicitous." [Record No. 269] The Sixth Circuit ruled in Maxwell's favor on this issue, concluding that the counts were based on the same conspiracy. *See Maxwell v. United States*, 617 F. App'x 470, 473 (6th Cir. 2015). Maxwell's heroin conspiracy conviction was subsequently vacated, and he was resentenced to 360 months of imprisonment followed by 10 years of supervised release on Count 1. [Record No. 295] The Sixth Circuit affirmed this sentence on March 3, 2017. *United States v. Maxwell*, 678 F. App'x 395 (6th Cir. 2017) [Record No. 311].

This matter is now pending for consideration of Maxwell's *pro se* motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, filed March 19, 2018. [Record No. 314] Maxwell argues that the government withheld exculpatory evidence during his jury trial in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and that his attorney provided ineffective assistance by failing to adequately advise him of the evidence that would be introduced at trial. [Record No. 314-1] Because the Court conducted a full resentencing hearing following remand and prior to entry of an amended judgment, his motion is not considered second or successive. As a result, the Court has jurisdiction to consider the motion without certification from the Sixth Circuit. *King v. Morgan*, 807 F.3d 154, 157 (6th Cir. 2015) (citing *Magwood v. Patterson*, 561 U.S. 320, 328-29 (2010)).

## I.

Maxwell was indicted in April 2009. [Record No. 3] He was initially represented by John Alig, but Alig withdrew from the case due to a conflict. [Record Nos. 26, 42] David Fessler was subsequently appointed to represent Maxwell. [Record No. 46] The allegations against Maxwell asserted that he was a drug dealer using the street name "Stone" and was

responsible for a large drug distribution operation. Maxwell denied that he was "Stone" and proceeded to a jury trial.

Eight co-conspirators testified during the trial and identified Maxwell as Stone. [Record No. 233] The government also introduced phone records which linked Maxwell to the alias "Stone". Maxwell called his sister, Teresia Maxwell, who testified that he was not Stone. However, the phone records established that there were calls between a phone number belonging to Stone and Teresia Maxwell. The jury found Maxwell guilty at the conclusion of the trial. [Record No. 146]

As noted above, Maxwell appealed. But in affirming his conviction, the Sixth Circuit discussed the wealth of evidence presented during trial which tied Maxwell to the conspiracies. It noted in relevant part:

> In this case, eight witnesses, several of whom were Maxwell's alleged co-conspirators, identified Maxwell as the leader of a conspiracy to distribute large quantities of crack cocaine and heroin in the Northern Kentucky area. Additionally, cellular phones seized from the three locations tied to the drug sales were linked via programmed numbers to the phone number assigned to Maxwell. McIntosh, the registered owner of the cellular phone with Maxwell's assigned number, testified that she obtained this phone for Maxwell at his request. This phone number either received or made calls to Maxwell's sister on nine occasions in May 2008. Additionally, Ross, the alleged co-leader of the conspiracy along with Maxwell, testified that the co-conspirators sold approximately fifteen ounces of crack cocaine and fifteen to twenty ounces of heroin in Northern Kentucky.

*Shields*, 415 F. App'x at 705.

## II.

Maxwell's § 2255 motion was referred to a United States Magistrate Judge for review and issuance of a recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). The parties fully briefed the matter and United States Magistrate Judge Hanly A. Ingram held an

evidentiary hearing regarding factual disputes concerning the claims of ineffective assistance of counsel. [Record Nos. 323, 327, 337] Judge Ingram subsequently recommended that Maxwell's § 2255 motion be denied. [Record No. 342][1]

Maxwell was appointed counsel for purposes of the evidentiary hearing and the Magistrate Judge extended the representation to include filing objections to the Recommended Disposition. [Record No. 340, p. 224] Counsel filed thorough objections to the Recommended Disposition on January 30, 2019. [Record No. 343]

**III.**

Maxwell presents two main claims in his § 2255 motion. First, he claims that the government committed a *Brady* violation. Second, Maxwell contends that he received ineffective assistance of counsel. [Record No. 314-1] The objections to the Recommended Disposition assert that Maxwell was credible during the evidentiary hearing, that his counsel was ineffective because Fessler conducted an unreasonable investigation, and that Maxwell received ineffective assistance of counsel during the plea bargaining phase. [Record No. 343] Maxwell bears the burden of proving his allegations by a preponderance of the evidence. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

**A. The Claimed *Brady* Violation**

While Maxwell does not object to the Recommended Disposition regarding the Magistrate Judge's *Brady* analysis, the Court nevertheless will review this determination *de*

---

[1] This Court reviews *de novo* those portions of the Magistrate Judge's recommendations to which specific objections are made. 28 U.S.C § 636(b)(1)(C). Additionally, when a recommended disposition is based on an evaluation of the credibility of witnesses, the Court is not required to conduct a hearing to make an independent determination of the issues. *United States v. Raddatz*, 447 U.S. 667, 675-76 (1980).

-4-

*novo*. Maxwell asserts that the government committed a *Brady* violation because it failed "to disclose all exculpatory evidence to the defense in violation of the Fifth and Fourteenth Amendments." [Record No. 314-1, p. 1] Specifically, he argues that the phone records introduced during trial were crucial evidence in the case and that the government failed to provide the defense with the phone numbers it intended to introduce. [*Id*. at 2]

However, as an initial matter, a *Brady* claim must be raised on direct appeal or it is procedurally defaulted. *See Peveler v. United States*, 269 F.3d 693, 698 (6th Cir. 2001). "A procedurally defaulted claim, absent a showing of cause and prejudice or actual innocence, cannot give rise to relief under § 2255." *Id*. (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)). Maxwell failed to raise his *Brady* claim on direct appeal and he has not shown that cause or actual prejudice excuse his default or that he is actually innocent. [Record No. 323]

But even if Maxwell had properly raised his *Brady* claim at an earlier stage of the proceedings, it would be unsuccessful. Simply put, he has not shown that the government withheld evidence that was favorable to him. *See Brady*, 373 U.S. at 87 (holding that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution"). "There are three components of a true *Brady* violation: [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281 (1999).

Maxwell contends that defense counsel requested the government to provide specific phone numbers which would be used at trial and that the government failed to provide those numbers. [Record No. 314-1, p. 2] He further states that, if he knew his sister's number was one of the phone numbers on the list, "he would not have put her on the stand and would have taken the 15 year plea offer and cooperated with the Government and received a downward departure for substantial assistance to the prosecution." [*Id*. at 2-3] However, because the phone evidence led to his conviction, it was not exculpatory or impeaching. Thus, it was not favorable to Maxwell. *See Shields*, 415 F. App'x at 703-04 (the phone records were part of the "overwhelming evidence demonstrating Maxwell's involvement in the conspiracy"); *Strickler*, 527 U.S. at 281. Further, the record establishes that the subject phone numbers were not suppressed by the government. [Record No. 323-1, p. 17; Record No. 337, Defense Exhibit 11] Specifically, Maxwell admits that the government provided his counsel with a CD that had the phone numbers on it. Because Maxwell failed to establish that the evidence at issue was favorable to him and that the government suppressed the evidence from him, his claim of a *Brady* violation fails.

### B. The Claim Regarding Maxwell's Credibility

Maxwell objects to the Magistrate Judge's determination that he was not credible. [Record No. 343] He asserts that, "[p]ursuant to 28 U.S.C. § 636(b)(1), this Court should conduct a *de novo* review of the Magistrate Judge's finding of fact and conclusions of law." [*Id*.] But as previously noted, the Court is not required to conduct a new hearing to make an independent determination of the issues when a recommended disposition is based on an evaluation of the credibility of witnesses. *Raddatz*, 447 U.S. at 675-76. "Rather, credibility determinations of the magistrate judge who personally listened to the testimony of a witness

should be accepted by a district judge unless in his *de novo* review of the record he finds a reason to question the magistrate judge's assessment." *United States v. Davidson*, 2008 WL 170507 at *6 (E.D. Ky. Jan. 17, 2008) (quoting *United States v. Brown*, 2007 WL 1345463 at *1 (E.D. Tenn. May 7, 2007)).

Here, the Magistrate Judge made a credibility determination that Fessler was more believable than Maxwell. [Record No. 342, p. 12-16] The Recommended Disposition explains in some detail the reasons for this conclusion. [*Id*.] Further, the Court will accept the Magistrate Judge's credibility determination because a *de novo* review of the trial transcript and the remainder of the record does not give reason to question this point. *Davidson*, 2008 WL 170507 at *6. Because the Magistrate Judge found that Fessler was more credible than Maxwell, the Court will analyze discrepancies between their testimony in favor of Fessler.

### C. Maxwell's Ineffective Assistance of Counsel Claim

Maxwell must show two elements to succeed on an ineffective assistance of counsel claim. *See Strickland*, 466 U.S. at 687. First, he must establish that counsel's performance was deficient. *Id*. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id*. Second, the movant must show that his counsel's deficient performance prejudiced him. *Id*. To demonstrate that counsel's deficient performance prejudiced him, Maxwell must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. Further, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*. at 686.

### i. Unreasonable Investigation

"In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to defense counsel's judgments." *Id*. at 691. In his objections, Maxwell contends that his trial attorney failed to ask the defendant's sister if she had any telephone numbers other than the one he was given. [Record No. 343] Further, he argues that "[f]ailing to ask an individual associated with individuals who routinely use multiple names and multiple phone numbers if she ever had another phone number was unreasonable." [*Id*. at 9] But the objections do not detail why this is unreasonable enough to overcome the heavy measure of deference afforded to defense counsel's judgment.

Conversely, the Magistrate Judge explained why Fessler conducted a reasonable investigation regarding the sister's phone number. [Record No. 342, p. 15] Fessler's testimony during the evidentiary hearing described "hundred and hundreds of pages" of phone numbers. [Record No. 340, p. 84] Fessler acquired the sister's phone number from Maxwell so that he could contact her, and Fessler testified that he "either asked her if her phone number's going to appear on that list, or if – or I checked it myself because I would have because we were elbow deep into phone numbers." [*Id*. at 53]

Additionally, if Fessler performed a less than complete investigation, reasonable professional judgment supports not investigating further into Maxwell's sister. Fessler was presented with hundreds of pages of phone numbers. Once he determined the sister's number was not on the list, it was not unreasonable for him to move on because he had no reason to believe that she would have another phone number somewhere in the information provided in discovery. Further, the assertion in Maxwell's objections that it was unreasonable not to ask

whether Maxwell's sister had another phone number because she was associated with people who had multiple numbers is unsubstantiated. There is no indication that Fessler knew or should have known that Maxwell's sister had more than one phone number, and he investigated the phone number that he was given which was associated with her. It is noteworthy that counsel is not required to perform perfectly. Instead, the law requires that counsel conduct a reasonable investigation. *Strickland*, 466 U.S. at 691. Because Fessler investigated the phone number provided for Maxwell's sister, and because neither Maxwell nor his sister indicated that she ever had a different number, his investigation was reasonable.

Maxwell also argues that he "did not have a chance to review any of the telephone numbers or cell phone logs" because the battery on Fessler's laptop died. [Record No. 314-1, p. 4] The Magistrate Judge rejected this assertion because of the weight given to Fessler's testimony that he always carried a charger with his laptop, and that he did not have all of the discovery at the time Maxwell claims Fessler's battery died. [Record No. 340, p. 42-43] Further, the exhibits presented by the defendant during the evidentiary hearing include a letter from Fessler to Maxwell discussing a meeting held during the time period Maxwell alleges Fessler's computer died. [Record No. 323-1, p. 11] The document states: "[t]his letter follows our meeting on July 1, 2019. At that time we discussed your case at length. In particular, we went over the paper discovery and listened to the audio evidence." [*Id*.] This letter indicates that Fessler and Maxwell reviewed audio evidence, presumably on Fessler's computer, at the time Maxwell is asserting Fessler's computer battery died. Importantly, while the defendant presented the letters that he frequently wrote Fessler asking questions and following-up about their meetings, there is no indication of a concern over a laptop battery dying. And because Maxwell wrote Fessler frequently about minor details in the case, discussion of something as

significant as not being able to review evidence due to a dead laptop battery would likely have occurred in one of Maxwell's letters.

Maxwell next asserts that his "[t]rial counsel was constitutionally ineffective in advising [him] to reject a plea offer and go to trial, without full[y] informing him of the evidence against him." [Record No. 314-1, p. 3] Specifically, Maxwell contends that Fessler advised him "to reject a plea offer of 15 years and the opportunity to get a downward departure under U.S.S.G. § 5K1 for offering substantial assistance to the Government." [*Id*.] This assertion fails because the record clearly establishes that Fessler did not encourage or discourage Maxwell from taking a plea. Instead, he left the decision to Maxwell, and Maxwell was adamant about going to trial even after Fessler explained how difficult it would be to succeed.

Finally, Maxwell argues that Fessler never explained conspiracy law to him, that he could be convicted based on circumstantial evidence, or that he could be criminally liable for drugs he never possessed. However, Fessler stated that he "explained to the Defendant that circumstantial evidence was still acceptable evidence and enough to convict him." [Record No. 323-1, p. 6] Additionally, Fessler informed Maxwell in one of his letters that the witnesses were "going to testify against [him] either directly or indirectly." [*Id*. at 14] Fessler also testified that he explained what the government needed to prove to convict him, and that Maxwell could be criminally responsible for drugs he never touched. [Record No. 340, p. 28, 37] The Magistrate Judge found that Fessler was credible on this point and, other than Maxwell's incredible assertions, there is nothing the record to question that determination. Therefore, the Court will accept fully the Magistrate Judge's credibility determination regarding Fessler's testimony. *Davidson*, 2008 WL 170507 at *6. Based on the foregoing

analysis, Maxwell has not demonstrated that Fessler was ineffective regarding his investigation of the case.

### ii. Plea Bargaining

Even if Fessler's investigation was unreasonable, Maxwell has not established that he was prejudiced by the alleged insufficiencies. Maxwell asserts he was prejudiced because: (i) if he had known about the link between his sister's number and Stone's phone; (ii) if Fessler had explained that he could be convicted based on circumstantial evidence; or (iii), if Fessler had explained he could be criminally liable for drugs he never possessed, he would have accepted the government's offer and pleaded guilty. [Record No. 314-1]

The *Strickland* analysis applies to ineffective assistance of counsel related to the plea bargaining phase of a criminal case. *Lafler v. Cooper*, 566 U.S. 156 (2012); *Missouri v. Frye*, 566 U.S. 134 (2012). To succeed on an assertion that ineffective assistance of counsel led a defendant to reject a plea offer and subsequently be convicted at trial, the

> defendant must show that but for the ineffective advice of counsel there was a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the guilty plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler*, 566 U.S. at 164. A "defendant has no right to be offered a plea, nor a federal right that the judge accept it." *Frye*, 566 U.S. at 148-49 (internal citations omitted).

No formal plea agreement was offered by the government in this case. Instead, Maxwell asserts that the informal offer made by the government is sufficient "trigger *Lafler* duties." [Record No. 343, p. 12] His objections cite a recommended disposition which stated:

> There was no document official labeled "plea offer" sent from the United States to defendant's attorney. Instead, the plea discussions occurred via email exchanges initiated by defendant's attorney. Under the unique facts of this case, however, those emails were sufficient to constitute a formal plea offer.

*United States v. Milby*, 2016 WL 11214708, at *10 (E.D. Ky. July 26, 2016). The recommended disposition in *Milby* was adopted as the opinion of the Court. *United States v. Milby*, 2017 WL 2345566 (E.D. Ky. May 30, 2017).

The present case is distinguishable from *Milby* on a few grounds. First, defense counsel in *Milby* reached out to the government indicating that the defendant "has asked me to inquire if you have any interest in making him any sort of offer if he capitulates and agrees to cooperate on anything and everything regarding this case." *Id*. Unlike *Milby*, the government in the present case reached out to defense counsel offering a potential plea if the defendant cooperated. And unlike *Milby*, Maxwell was unwilling to cooperate. [Record No. 340, p. 28-29]

Finally, "the fact of a formal offer means its terms and its processing can be documented so that what took place in the negotiation process becomes more clear if some later inquiry turns on the conduct of earlier pretrial negotiations." *Frye*, 566 U.S. at 146. The emails documented in *Milby* clearly establish the terms of a potential plea agreement to the extent that a later inquiry could determine the scope of the offer. 2016 WL 11214708 at *11. For example, the email in *Milby* identify the counts to which the defendant would plead guilty, the potential reduction for acceptance of responsibility, and the potential sentence. Conversely, the email offered by Maxwell during the evidentiary hearing states "Mr. Maxwell could significantly help himself if he has information regarding this person or any of his associates." [Record No. 323-1, p. 34] Therefore, while Fessler's letters to Maxwell indicate a potential

sentence below the 20-year mandatory minimum, the communications between Fessler and the government do not identify the count(s) which would be the subject of the defendant's guilty plea, the potential reduction for acceptance of responsibility, any potential reduction for cooperation, or the potential sentence. [*Id.*] The government's communications do not provide actual details of a plea agreement, so this case is distinguishable from *Milby*. Additionally, the claimed offer in the present case does not constitute a formal offer as required by *Lafler*.

In summary, because no formal offer was made to Maxwell, he cannot establish that, but for Fessler's alleged ineffective assistance there was a reasonable probability that the plea offer would have been presented to the court. Therefore, he has not shown prejudice regarding his claims of ineffective assistance of counsel.

## IV.

As correctly explained in the Recommended Disposition, a Certificate of Appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The defendant meets this standard if he can show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 472, 484 (2000)) (internal quotation marks omitted). The defendant has not met the standard here.

For the reasons set out above, it is hereby

**ORDERED** as follows:

1. The Magistrate Judge's Recommended Disposition [Record No. 342] is **ADOPTED** and **INCORPORATED** in full.

2. Maxwell's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [Record No. 314] is **DENIED** and his claims are **DISMISSED**, with prejudice.

3. This matter shall be **STRIKEN** from the Court's docket.

4. A Certificate of Appealability shall not issue.

Dated: February 5, 2019.

Signed By:
*Danny C. Reeves*
United States District Judge